UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MAGDALENO MENDOZA,<br>a/k/a "Alex Mendoza,"<br><br>Defendant. | **SEALED INDICTMENT**<br><br>25 Cr. ( )<br><br>**25 CRIM 28** |

**COUNT ONE**
(Conspiracy to Commit Wire Fraud)

The Grand Jury charges:

**THE ICOMTECH SCHEME**

1. At all times relevant to this Indictment, IcomTech ("IcomTech" or the "IcomTech Scheme") was a purported cryptocurrency mining and trading company that promised to earn its victim-investors ("Victims") profits in exchange for their purchase of purported cryptocurrency-related investment products, such as "packages" of cryptocurrency that the company claimed to be trading at a profit and "leases" on cryptocurrency "mining machines" that the company claimed were being used to generate cryptocurrency that the company would trade at a profit (collectively, the "Investment Products"). IcomTech's founder (the "Founder") and at least certain promoters ("Promoters"), including, among others, MAGDALENO MENDOZA, a/k/a "Alex Mendoza," the defendant, falsely promised Victims, among other things, guaranteed daily returns on their investments, and that Victims would double their investments within six months. In fact, as described in greater detail below, and as MENDOZA knew, IcomTech was a "Ponzi" or pyramid scheme. MENDOZA, the Founder, and IcomTech's other promoters were not trading or mining cryptocurrency. Instead, MENDOZA, the Founder, and other IcomTech

promoters used Victim funds to pay purported returns to other Victims, to further promote the Scheme to other Victims, and to pay for personal expenditures. Most Victims ultimately lost their entire investments.

2.     To further the scheme, among other things, the Founder and certain Promoters advertised IcomTech online and through text messaging applications, recruited Promoters, hired a website builder, and built a website and online portal (the "Back Office"), where Victims were provided with personal accounts.

3.     From in or about December 2018 through at least on or about January 24, 2020, MAGDALENO MENDOZA, a/k/a "Alex Mendoza," the defendant, traveled throughout the United States and hosted lavish IcomTech promotional events, more intimate small community presentations, chat groups, and videoconferences. He also participated in creating YouTube videos. All of these activities were aimed at convincing Victims to purchase IcomTech Investment Products and to recruit more Victims into the Scheme.

4.     During the larger scale promotional events, including events hosted at a restaurant in the vicinity of Los Angeles, California owned by MAGDALENO MENDOZA, a/k/a "Alex Mendoza," the defendant (the "Restaurant"), MENDOZA presented IcomTech Investment Products and the attendant compensation plan, encouraged Victims to invest as a means of achieving financial freedom, and boasted about the amount of money Victims could earn through IcomTech. Other Promoters hosted similar events, including one that was held in New York, New York in or about January 2019.

5.     Victims purchased Investment Products in IcomTech from Promoters, including MAGDALENO MENDOZA, a/k/a "Alex Mendoza," the defendant, using cash, checks, interstate wire transfers, and cryptocurrencies like Bitcoin. After purchases were made, the

Promoters would provide Victims with access to an individual account in the Back Office, where Victims could log on and monitor their investments and the purported gains on their investments, and, at least in theory, withdraw their earnings.

6.   In fact, as MAGDALENO MENDOZA, a/k/a "Alex Mendoza," the defendant, knew, there were no real gains because there were no true investments. MENDOZA's and the other Promoters' representations about IcomTech engaging in cryptocurrency trading and mining on Victims' behalf, and their promises of guaranteed returns on investment, were false and misleading because IcomTech engaged in no cryptocurrency trading or cryptocurrency mining. Instead, MENDOZA and his co-conspirators used Victims' money to make payouts to other Victims, to finance further recruitment of Victims, and to enrich themselves. For example, MENDOZA's bank records show that he withdrew in cash tens of thousands of dollars collected from Victims, spent Victim funds for personal expenditures such as luxury goods and travel, and spent Victim funds on further promotion of IcomTech, including payments towards event venues.

7.   Soon after MAGDALENO MENDOZA, a/k/a "Alex Mendoza," the defendant, began promoting IcomTech, he began receiving complaints from Victims about not being able to withdraw their investments from their accounts in the IcomTech Back Office. MENDOZA and other Promoters typically responded to Victims' complaints with excuses about technical difficulties, alleged hacks, and other purported mishaps that would delay withdrawal of Victims' funds. Despite these complaints and MENDOZA's knowledge that Victims repeatedly were unable to withdraw their purported investment gains from IcomTech, MENDOZA nevertheless continued to promote IcomTech and accept new Victims' investments.

8.   By in or about the end of 2019, IcomTech had ceased making payments to Victims, and its chief promoters, including MAGDALENO MENDOZA, a/k/a "Alex Mendoza,"

the defendant, had stopped responding to Victims. Most Victims lost their entire investment in IcomTech.

9. After IcomTech collapsed, Victims continued to reach out to MAGDALENO MENDOZA, a/k/a "Alex Mendoza," the defendant, to complain that they had been defrauded and to seek the return of their funds. MENDOZA communicated with co-conspirators about such complaints from Victims. In one communication on or about January 24, 2020, MENDOZA sent the Founder an electronic message with a screenshot of a Victim's ("Victim-1") Facebook post. The Facebook post stated, in substance and in part, that Victim-1 was learning about more and more Victims who believed that they had been defrauded by IcomTech and the Founder. Immediately below the post, another Facebook user posted a photograph of MENDOZA. The Founder replied to MENDOZA that MENDOZA was "famous," to which MENDOZA responded, in substance and in part, "what crappy fame" and he advised that they should report the page to Facebook to get the post taken down. MENDOZA then said, in substance and in part, that he and the Founder should proceed "careful[ly]" and inform the other if they "say something" or "see something."

**Statutory Allegations**

10. From at least in or about December 2018 through at least on or about January 24, 2020, in the Southern District of New York and elsewhere, MAGDALENO MENDOZA, a/k/a "Alex Mendoza," the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit wire fraud in violation of Title 18, United States Code, Section 1343.

11. It was a part and an object of the conspiracy that MAGDALENO MENDOZA, a/k/a "Alex Mendoza," the defendant, and others known and unknown, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Section 1349.)

**FORFEITURE ALLEGATIONS**

12. As a result of committing the offense alleged in Count One of this Indictment, MAGDALENO MENDOZA, a/k/a "Alex Mendoza," the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense.

### Substitute Assets Provision

13. If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853 (p), and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property.

(Title 18, United States Code, Sections 981;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)

FOREPERSON

*Danielle R. Sassoon*
DANIELLE R. SASSOON
United States Attorney